Juan SOSA, Petitioner,

v.

STATE of Alaska, Respondent.

Nos. S–8840.

Supreme Court of Alaska.

June 16, 2000.

Quinlan Steiner, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Petitioner.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

In two specific circumstances Alaska's implied consent statutes permit a driver's blood to be drawn for chemical testing for evidence of driving while intoxicated (DWI). Those circumstances do not include unavailability of a breath testing device.[1] Because no functioning breath testing device was then available, a magistrate issued a search warrant permitting Juan Sosa's blood to be drawn after he was arrested for DWI. Can Sosa be charged with evidence tampering for defying the warrant, when neither exceptional circumstance specified by statute was present? We hold that he cannot. Because the warrant could not legally permit a blood draw to support a DWI charge, his refusal cannot constitute evidence tampering. We therefore vacate his conviction.

## II. FACTS AND PROCEEDINGS

A Bethel police officer arrested Juan Sosa for DWI and took him to the police station. Because the station's chemical breath testing device was malfunctioning, the officer did not ask Sosa to submit to a chemical breath test; instead, the officer obtained a search warrant from a magistrate. The search warrant allowed "Any Peace Officer" to seize a sample of Sosa's blood.[2] When approached and shown the warrant, Sosa twice refused to submit to a blood test; at one point he assumed a combative stance and stated that he would fight rather than submit to a blood draw. The police officers relented and did not draw Sosa's blood.

The state charged Sosa with felony DWI, reckless driving, refusal to submit to a chemical test, and tampering with physical evidence by refusing to submit to the blood test.

---

1. See AS 28.35.031, .032, .035.

2. The excerpt does not contain the warrant.

It did not charge Sosa with assault or ask the court to hold him in contempt for defying the search warrant. The trial court dismissed the refusal charge, but a jury convicted Sosa of the three remaining counts. The superior court denied Sosa's motion for judgment of acquittal on the evidence tampering charge, and the court of appeals affirmed. This court then granted Sosa's petition for hearing on the issue of the validity of the evidence tampering charge.

## III. DISCUSSION

### A. Standard of Review

■ We review interpretations of statutes de novo,[3] adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[4] We review Sosa's claims of error for plain error because he failed to raise them in the trial court.[5] Plain error exists "where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[6]

### B. Exceptions to the Prohibition on Chemical Blood Tests

The Alaska legislature constructed a comprehensive statutory scheme, commonly known as the implied consent statutes,[7] to govern chemical testing of DWI arrestees. Under these statutes, any driver "shall be considered to have given consent to a chemical test or tests of the person's *breath*."[8] The statutes also state that the driver shall be deemed to have consented to *blood* testing in two specific and limited circumstances: (1) if the driver "is involved in a motor vehicle accident that causes death or serious physical injury to another person,"[9] or (2) if the driver is "unconscious or otherwise ... incapable of refusal."[10] The implied consent statutes describe no other circumstance as a basis for implying consent for a blood test; they contain no general language implying consent to a blood draw except in the two circumstances specified.

■ The state, however, argues that we should recognize an implicit exception when breath testing devices malfunction. It contends that the legislature could not have intended to leave police with no means to obtain direct evidence of drivers' intoxication when mechanical breakdowns prevent breath testing.

■ The statutes do not explicitly permit unconsented blood draws if breath testing machines malfunction or are otherwise unavailable, and we decline to create an im-

3. See *Boone v. Gipson*, 920 P.2d 746, 748 (Alaska 1996).

4. See *M.R.S. v. State*, 897 P.2d 63, 66 (Alaska 1995).

5. See *Moreau v. State*, 588 P.2d 275, 279 (Alaska 1978).

6. *Broeckel v. State, Dep't of Corrections*, 941 P.2d 893, 897 (Alaska 1997) (quoting *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981)).

7. See AS 28.35.031, .032, .035.

8. AS 28.35.031(a) (emphasis added).

9. AS 28.35.031(g). Subsection (g) provides:

A *person* who operates or drives a motor vehicle in this state *shall be considered to have given consent to a chemical test or tests of the person's* breath and *blood* for the purpose of determining the alcoholic content of the person's breath and blood and shall be considered to have given consent to a chemical test or tests of the person's blood and urine for the purpose of determining the presence of controlled substances in the person's blood and urine *if the person is involved in a motor vehicle accident that causes death or serious physical injury to another person.* The test or tests may be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle in this state that was involved in an accident causing death or serious physical injury to another person. (Emphasis added.)

10. AS 28.35.035(b). Subsection (b) provides:

A person who is unconscious or otherwise in a condition rendering that person *incapable of refusal* is considered not to have withdrawn the consent provided under AS 28.33.031(a) or AS 28.35.031(a) or (g) and *a chemical test may be administered to determine the amount of alcohol in that person's* breath or *blood* or to determine the presence of controlled substances in that person's blood and urine. A person who is unconscious or otherwise incapable of refusal need not be placed under arrest before a chemical test may be administered.

plicit exception to cover that situation. "The Implied Consent Statute provides the exclusive authority for the administration of police-initiated chemical sobriety tests to a driver arrested for acts allegedly committed while operating a motor vehicle."[11] "Where a statute's meaning appears clear and unambiguous, ... the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent."[12] The state has discussed no legislative history at all and has referred us to no facts that would cause us to question the plain language of these statutes. We find it significant that the legislature chose to specify only two limited exceptions, despite the conspicuously foreseeable possibility that a breath-testing machine might sometimes be unavailable, especially in a remote location.

We therefore reject the state's argument, decline to create an implicit exception to the implied consent statutes, and hold that Sosa cannot be deemed to have impliedly consented to a blood test.

### C. Sosa's Refusal to Comply with the Search Warrant

The state argues that even if Sosa is not deemed to have impliedly consented to the blood test, he had no right to disobey the warrant. According to the state, when the police officers served Sosa with the warrant authorizing a blood draw, he had an obligation to permit the blood draw, regardless of the underlying legality of the attempted search. The state directs us to *Elson v. State*.[13] In that case, a driver physically

resisted a police "pat down" by grabbing the hand of the arresting officer when he reached into Elson's pocket to remove what he thought was a knife.[14] When the state later charged Elson with cocaine possession, Elson attempted to exclude evidence of his physical resistance to the search.[15] We upheld the superior court's admission of the evidence of Elson's resistance and held that "a private citizen may not use force to resist a peaceful search ... regardless of whether the search is ultimately determined to be illegal."[16]

Sosa told the officers that he would not permit a blood draw and insisted that they go away so he could sleep. The superior court found that Sosa resisted the blood draw by threatening to fight if the officers attempted to draw his blood.

The rationale underlying *Elson* was promotion of orderly settlement of disputes and avoidance of violent self-help.[17] We were concerned with the "danger of escalating violence" in situations where a citizen physically resisted arrest and provoked a potentially violent confrontation with police.[18]

■ We need not consider whether Sosa's conduct would have been admissible as evidence of assault, had he been so charged.[19] The issue here is whether Sosa could be charged with evidence tampering.[20] Sosa argues that conviction for tampering with evidence "is irreconcilable with the legislature's prohibition on the production of that evidence. This argument does not address the admissibility of evidence."

(Emphasis added.)

11. *Pena v. State*, 684 P.2d 864, 867 (Alaska 1984). *See also Bass v. Municipality of Anchorage*, 692 P.2d 961, 964 (Alaska App.1984) (concluding that, based on *Pena*, "[i]t therefore seems clear that the municipality can justify forcibly taking the blood sample from Bass only if the taking falls under AS 28.35.035(b)").

12. *University of Alaska v. Tumeo*, 933 P.2d 1147, 1152 (Alaska 1997).

13. 659 P.2d 1195 (Alaska 1983).

14. *See id.*

15. *See id.*

16. *Id.* at 1200.

17. *See id.* (citing *United States v. Ferrone*, 438 F.2d 381, 390 (3d Cir.1971)).

18. *Id.*

19. *See* AS 11.41.230(a)(3) (a person commits the crime of fourth-degree assault if "by words or other conduct that person recklessly places another person in fear of imminent physical injury.").

20. AS 11.56.610(a)(3) provides that "A person commits the crime of tampering with physical evidence if the person ... prevents the production of physical evidence in an official proceed-

■ We agree with Sosa. There are three closely related reasons. First, to permit an evidence tampering charge for his refusal to permit the blood draw is equivalent to prosecuting him for violating the implied consent statutes, i.e., for refusing to submit himself to a test he is deemed to have impliedly consented to take. Because the implied consent statutes are the legislature's comprehensive regime for implying consent and for punishing a failure to comply with the statutes, a refusal to be tested should be punished in accordance with the implied consent statutes, and not under the tampering statute.

■ Second, as contemplated by the implied consent statutes, a refusal to give a blood (or breath) sample may only be prosecuted if the driver had a duty to give the sample. There is no prosecutable refusal unless the person refuses to give a sample when legally obliged to do so. The implied consent statutes define the driver's legal obligation. It would be remarkable if a tampering charge could lie for declining to produce evidence which the statutes do not allow the state to demand in the factual circumstances of Sosa's arrest. Thus, where the only ostensible authority for ordering Sosa's blood drawn is the very statutory regime which does *not* punish him for withholding his consent, his refusal may not be the basis for an evidence tampering charge.

Third, evidence tampering requires interference by force, threat, or deception with the production of physical evidence.[21] But Sosa was entitled to peacefully refuse to comply under these circumstances; had he refused peacefully, his blood could not properly have been drawn, and if it had been drawn despite his refusal, the implied consent statutes would not have regarded it as evidence supporting the DWI charges. Therefore, his conduct, even if not peaceful,

could not be regarded as having causally interfered with production of evidence of DWI. This is not merely the equivalent of conduct that prevents production of evidence which turns out to be inadmissible, and whose admissibility cannot be determined until later.[22] Here the complete inutility of the test results as evidence was readily knowable given the complete absence of facts that might have brought either statutory exception into play. Sosa's warrant facially violated the implied consent statutes.[23] Had the officers subdued Sosa and drawn his blood for testing, the unlawfulness of the warrant would have made the test results unusable.

In enacting the implied consent statutes, the legislature carefully balanced the privacy interests of DWI arrestees against the state's interest in collecting evidence. Permitting the state to charge Sosa with evidence tampering in this situation would upset that balance. Sosa cannot be charged with evidence tampering for having refused to submit to this unlawful search.

## D. *Preservation of Issue*

■ The state argues that Sosa's failure to challenge the validity of the warrant in the trial court precludes consideration of its validity on appeal. Our resolution of the merits demonstrates that it was plain error to permit the state to proceed on the tampering charge, and we consider claims of plain error regardless of whether the parties argued them in the trial court.[24]

The state nonetheless argues that *Moreau v. State*[25] should control. In *Moreau,* we refused to consider an exclusionary rule argument because the defendant had not raised

---

ing or a criminal investigation by the use of force, threat, or deception against anyone...."

**21.** *See* AS 11.56.610(a)(3).

**22.** *Cf. Brown v. State,* 739 P.2d 182, 184 (Alaska App.1987).

**23.** As we stated in *Pena,* a warrant cannot override the statute: "The Implied Consent Statute ... applies equally to preclude chemical sobriety

tests performed pursuant to search warrants as it does to tests performed as searches incident to arrest." *Pena,* 684 P.2d at 867.

**24.** *See State Farm Ins. Co. v. Raymer,* 977 P.2d 706, 711 (Alaska 1999) (stating that "[w]e will not consider new arguments not raised in the trial court, unless the issues establish plain error").

**25.** 588 P.2d 275 (Alaska 1978).

the issue in the trial court by asking that court to suppress the evidence.[26]

*Moreau* does not control here. First, *Moreau* applies to improper police conduct, not to a statutory violation based on an invalid warrant.[27] Second, the exclusionary rule cannot apply here. Because no blood was drawn and no tests were conducted, there was no evidence to suppress. Sosa had no reason, much less an obligation, to challenge the warrant in the trial court. Had Sosa acceded to the unlawful warrant and his blood had been drawn, we assume for discussion's sake that he would have been obliged to challenge the warrant in the trial court.[28] But absent evidence subject to exclusion, a *Moreau* hearing would have been pointless. *Moreau* does not preclude Sosa from raising the issue in this petition.

## IV. CONCLUSION

For these reasons, we VACATE Sosa's conviction for evidence tampering.

**26.** *Id.* at 280.

**27.** *See id.*

**28.** *See id.*