NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

STATE OF ALASKA,

Petitioner,

v.

DAVID EVANS,

Respondent.

Court of Appeals No. A-11865
Trial Court No. 2NO-13-590 CR

O P I N I O N

No. 2515 — September 2, 2016

Petition for Review from the District Court, Second Judicial District, Nome, Brooke Alowa, Magistrate Judge.

Appearances: Kenneth M. Rosenstein, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Petitioner. Myron Angstman, Angstman Law Office, Bethel, for the Respondent.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD.

David Evans was arrested for driving under the influence. When Evans refused to take a breath test, the police obtained a search warrant to draw a sample of his

_____

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

blood. A test of that sample showed that Evans had a blood-alcohol level of .094 percent, which is over the legal limit of .08.[1]

Evans was subsequently charged with both driving under the influence and refusal to submit to a breath test. He first moved to dismiss the refusal charge, arguing that he could not be subject to the penalties for breath-test refusal under Alaska's implied consent statutory scheme when the police had obtained the same evidence through the warrant process and were pursuing a prosecution for driving under the influence based on that evidence. The district court denied this motion.

Evans then moved to suppress the results of the blood test, arguing that Alaska law did not authorize the courts to issue search warrants for non-consensual blood draws in cases where only alcohol was suspected and the defendant had already refused to submit to a breath test. The district court agreed with this argument and suppressed the results of the blood test. The State petitioned for review.

This petition requires us to construe the legislature's 2001 amendment to Alaska Statute 28.35.031, Alaska's implied consent statute. For the reasons explained in this opinion, we conclude that the statute, as amended, authorizes courts to issue search warrants in these circumstances. Accordingly, we reverse the district court's ruling suppressing the evidence of Evans's blood test result and remand this case for further proceedings consistent with this decision.

We emphasize that our holding is limited to the issues directly before us. Evans has not cross-petitioned us to review the trial court's earlier ruling on his motion

---

[1] AS 28.35.030(a)(2).

to dismiss the refusal charge. We therefore express no opinion as to the merits of that decision.[2]

*Why we conclude that Alaska law does not prohibit courts from issuing warrants for chemical tests of a person's blood even in cases where the person has refused to submit to a breath test and could potentially be prosecuted for the separate crime of breath-test refusal*

In Alaska, a motorist lawfully arrested for driving under the influence must submit to a requested breath test upon receiving the proper legal advisements or face prosecution for refusal to submit to a chemical test.[3] The question presented in Evans's case is whether, in the event a motorist refuses to take a breath test, the police may nevertheless obtain a search warrant to compel the motorist to submit to some other chemical test (generally a blood test) for the purpose of establishing the motorist's blood-alcohol level.

The Alaska Statutes do not directly answer this question. Under AS 28.35.031(a), any person who drives a motor vehicle and is lawfully arrested for driving under the influence "shall be considered to have given consent to a chemical test or tests of the person's breath for the purpose of determining the alcoholic content of the person's blood or breath." If a motorist refuses to submit to this breath test after being advised of the legal consequences of that refusal, AS 28.35.032(a) provides that "a chemical test *may not be given*, except as provided by AS 28.35.035." (Emphasis

---

[2]  *Cf.* AS 28.35.035(c) (permitting the police to administer a non-consensual chemical test to a person lawfully arrested for DUI who is involved in an injury accident and who refuses to submit to a breath test but also providing that if the non-consensual chemical test is administered "that person is not subject to the penalties for refusal to submit to a chemical test provided by AS 28.35.032").

[3]  AS 28.35.031; AS 28.35.032.

added.) Alaska Statute 28.35.035 provides two circumstances in which the police may administer a chemical test of breath or blood without the motorist's consent: (1) if the motorist was involved in an accident that caused death or physical injury; or (2) if the motorist is unconscious or otherwise incapable of refusal.[4]

In 1979, in *Anchorage v. Geber*,[5] the Alaska Supreme Court construed the language of AS 28.35.032(a) — "a chemical test may not be given" — to apply to all chemical tests of both breath and blood. Thus, the Court interpreted the statute to prohibit the police from administering *any* chemical test of the person's breath or blood without their express consent.[6] The supreme court reasoned that, by elevating refusal to a separate crime and enacting a comprehensive statutory scheme for the state's implied consent law, the Alaska legislature had made the breath test the "exclusive method for obtaining direct evidence of a suspect's blood alcohol content, absent his or her express consent to the use of some other form of testing."[7]

Five years later, in *Pena v. Anchorage*,[8] the Alaska Supreme Court held that this limitation in AS 28.35.032(a) extended even to police-initiated non-consensual blood draws performed pursuant to a search warrant.[9] The supreme court again reasoned that the implied consent statutory consent scheme was intended to be comprehensive and the State was permitted to charge a person lawfully arrested for DUI with breath-test

---

[4] AS 28.35.035(a), (b).

[5] 592 P.2d 1187 (Alaska 1979).

[6] *Id.* at 1191.

[7] *Id.* at 1192.

[8] 684 P.2d 864 (Alaska 1984).

[9] *Id.* at 867.

refusal if the person refused to submit to a requested breath test but the State was not permitted to seek a search warrant to obtain the same evidence through other means.[10]

Thus, under *Geber* and *Pena*, if a person lawfully arrested for driving under the influence refused to submit to a breath test, the State was entitled to charge that person with the crime of breath-test refusal and could use evidence of the refusal against the person in the prosecution for the underlying offense of driving under the influence; but the State was not entitled to compel the person to comply with a non-consensual chemical test of their breath or blood — even through the warrant process.

Justice Compton dissented from the holding in *Pena*. In Justice Compton's view, the implied consent statutory scheme addressed only chemical tests given "at the direction of a law enforcement officer," not tests compelled by court order through a lawfully obtained warrant.[11] Justice Compton observed that there was "nothing in the statutes to indicate that the legislature contemplated restricting searches pursuant to warrant, which derive from the judicial authority of the court, rather than the power of an officer to search an individual at the time of arrest."[12]

Six years after *Pena*, in 2000, the Alaska Supreme Court decided *Sosa v. State*.[13] *Sosa* involved a defendant who was arrested for driving under the influence in a remote location. When the police realized that the local breath-test machine was malfunctioning, they applied for, and obtained, a search warrant to seize a sample of Sosa's blood for chemical testing. Sosa resisted the efforts to draw his blood and was

---

[10] *Id.*

[11] *Id.* at 868 (Compton, J., dissenting).

[12] *Id.*

[13] 4 P.3d 951 (Alaska 2000).

later charged with, and convicted of, tampering with physical evidence based on that resistance.[14]

The Alaska Supreme Court reversed the tampering conviction in *Sosa*, applying the same reasoning it relied on in *Geber* and *Pena* and concluding that Sosa could not be compelled to undergo a non-consensual test of his blood, even pursuant to a warrant, because a malfunctioning breath-test machine did not fit into the statutory exceptions created by the legislature in AS 28.35.035.[15] The State argued that an exception should be made for circumstances in which no operable breath-test machine existed and there was therefore no other means to obtain the necessary evidence and no possible penalties for breath-test refusal. But the supreme court declined to recognize such an exception.[16]

A year after *Sosa* was decided, the 2001 Alaska legislature declared its disagreement with the Alaska Supreme Court's *Geber-Pena-Sosa* line of precedent by adding subsection (h) to AS 28.35.031.[17] That subsection provides: "Nothing in this section shall be construed to restrict searches or seizures under a warrant issued by a judicial officer, in addition to a test permitted under this section."[18]

When we interpret the intended scope and meaning of a statutory provision under Alaska law, we apply a sliding-scale approach to statutory interpretation.[19] Under this approach, the plain language of a statute is significant but does not always control

[14] *Id.* at 952.

[15] *Id.* at 953-54.

[16] *Id.* at 953-54.

[17] Ch. 63, § 12, SLA 2001.

[18] AS 28.35.031(h).

[19] *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012).

its interpretation because "legislative history can sometimes alter a statute's literal terms."[20]  As a general matter, "the plainer the language of the statute, the more convincing contrary legislative history must be."[21]

Here, the plain language of subsection (h) indicates that the legislature intended to remove all of the limitations placed by the Alaska Supreme Court on the government's ability to use the search warrant process to investigate and obtain evidence of driving under the influence.

The legislative history of subsection (h) supports this interpretation.  The sponsor statement expressly states that the intent of the amendment is to repudiate the reasoning in *Pena* and *Sosa* and to adopt the view expressed in Justice Compton's dissent in *Pena* — that is, to adopt the view that the implied consent statutory scheme limits the authority of the police to obtain a *warrantless* chemical test incident to a lawful arrest for DUI, but it was not intended to restrict the authority of *the courts* to issue a warrant to compel blood or other chemical evidence upon a proper showing of probable cause.[22]

This point was also made during a discussion of the proposed 2001 amendment in the House Judiciary Committee.[23]  Chief Assistant Attorney General Dean Guaneli of the Department of Law told lawmakers that the courts had construed the implied consent statutes to preclude the police from administering any chemical test

---

[20]  *Id.* (quoting *Bartley v. State Dep't of Admin., Teacher's Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005)).

[21]  *Id.* (quoting *Bartley*, 110 P.3d at 1258).

[22]  Supplemental Sponsor Statement of Rep. Norman Rokeberg for C.S.H.B. 4, 22d Leg., 1st Sess. (Feb. 16, 2001) (quoting *Pena*, 684 P.2d at 868 (Compton, J., dissenting)).

[23]  Minutes of House Judiciary Committee, House Bill 4, testimony of Chief Assistant Attorney General Dean Guaneli, log no. 1623 (Apr. 3, 2001).

other than a breath test "even pursuant to a warrant."[24] Guaneli stated that subsection (h) "simply tells the court that it cannot construe the statute in this fashion because it is not what is intended by the legislature."[25]

Evans argues that the legislature's intent to overrule *Pena* and *Sosa* was more limited. He claims that the legislature enacted subsection (h) to permit the police to obtain warrants for blood draws only in cases where a breath test is unavailable or otherwise inadequate — for example, when no operable breath-test machine is available, or when there is reason to believe the defendant is under the influence of controlled substances. Evans further contends that the legislature never intended the courts to issue search warrants for blood draws in "routine" DUI cases like his, where no controlled substances are suspected and where his refusal to submit to the breath test resulted in a criminal prosecution for the crime of breath-test refusal.

In support of this position, Evans points to various legislative committee hearings in which proponents of the bill explained that it was needed to fix the problems created by broken breath-test machines or other situations where the breath test or a charge of breath-test refusal would be inadequate.[26] Evans also points to concerns raised

---

[24]  *Id.*

[25]  *Id.*

[26]  *See, e.g.*, Minutes of House Judiciary Committee, House Bill 4, testimony of Chief Assistant Attorney General Dean Guaneli, log no. 0424 (Mar. 29, 2001) (explaining that one motivation for AS 28.35.031(h) was the belief that "when law enforcement officers face the difficult situation of being unable to collect evidence *due to a lack of functioning equipment*, they should have the latitude to get search warrants" (emphasis added)); Minutes of House Judiciary Committee, House Bill 4, testimony of Chief Assistant Attorney General Dean Guaneli, log no. 0703 (Mar. 29, 2001) (explaining the police need search warrants in "situations in which the [breath-test] machines break down").

by legislators that non-consensual blood draws would become routine in every driving under the influence case.[27]

We acknowledge that many of the committee hearings focused on the rare circumstances where search warrants were needed because a breath test was unavailable or otherwise inadequate. But a review of the committee hearings as a whole confirms that the legislature understood that subsection (h) was intended to return full authority to the court to issue search warrants in DUI investigations, as appropriate under the circumstances, and unencumbered by any limitations otherwise caused by the implied consent statutory scheme.[28]

---

[27] *See, e.g.*, Minutes of House Judiciary Committee, House Bill 4, statements of Rep. Ethan Berkowitz, log nos. 0424, 0996, 1696 (Mar. 29, 2001).

[28] *See, e.g.*, Minutes of House Judiciary Committee, House Bill 4, testimony of Chief Assistant Attorney General Dean Guaneli, log no. 0703 (Mar. 29, 2001) (explaining that under AS 28.35.031(h), judges would consider "whether there is probable cause to believe that a crime has been committed and that there is evidence of that crime that exits such that the state should be allowed to seize that evidence" and that the factors that would bear on whether a warrant should issue are "one, are there sufficient grounds to believe that an individual was driving drunk; two, is there evidence to be obtained; and three, are there other ways to obtain that evidence"); Minutes of House Judiciary Committee, House Bill 4, testimony of Chief Assistant Attorney General Dean Guaneli, log no. 0424 (Mar. 29, 2001) ("[F]or 200 years, search warrants have been the traditional means used in this country to gather evidence. [AS 28.35.031(h)] requires that an application be presented to the judge whereby he/she then determines whether a search can occur, and under what conditions ... [AS 28.35.031(h)] simply allows officers to use the traditional method for gathering evidence."); Minutes of House Judiciary Committee, House Bill 4, testimony of Deputy Director of the Public Defender Agency Blair McCune, log no. 0255 (Mar. 29, 2001) (opposing AS 28.35.031(h) because it amounted to a rejection of "what the legislature had said a number of years ago, that the way to punish people who refuse to take a breathalyzer test is via the refusal statute," not by authorizing search warrants for their blood); Minutes of House Judiciary Committee, House Bill 4, statement of Rep. Jeannette James, log no. 1623 (Apr. 3, 2001) (noting that under AS 28.35.031(h), judges would have discretion whether or not to issue a warrant in each case).

The other parts of the legislative history also make this legislative intent clear. As already noted, the sponsor statement expressly states that the purpose of the amendment was to eliminate the restrictions on search warrants imposed by the Alaska Supreme Court's decision in *Pena* and to "adopt ... the view expressed by Justice Compton in his dissenting opinion in *Pena v. State*" — specifically, the view that "[t]here simply is nothing in the [implied consent and refusal] statutes to indicate that the legislature contemplated restricting searches pursuant to warrant."[29] The sectional analysis further confirms this purpose.[30]

Evans argues that if the legislature actually intended AS 28.35.031(h) to be read this broadly, the legislature would have done more than just enact subsection (h), it would have also amended or altered the statutory language in the refusal statute — which still provides that if a person lawfully arrested for driving under the influence refuses to submit to a breath test, after being advised of the legal consequences of that refusal, "*a chemical test may not be given* except as provided by AS 28.35.035" (the exceptions for injury accident and unconscious motorist).[31]

The State responds to this argument by claiming that the enactment of subsection (h) "impliedly repealed" the "no chemical test may be given" language in the refusal statute.

---

[29] Supplemental Sponsor Statement of Rep. Norman Rokeberg for C.S.H.B. 4, 22d Leg., 1st Sess. (Feb. 16, 2001) (quoting *Pena*, 684 P.2d at 868 (Compton, J., dissenting)).

[30] Sectional analysis for C.S.H.B. 4, 22d Leg., 1st Sess. (Feb. 16, 2001) (stating that the provision that became subsection (h) "provid[es] that the implied consent statute was not intended to prevent police search warrants").

[31] AS 28.35.032(a) (emphasis added). In his opening brief, Evans cites AS 28.35.-031(c), which contains similar language. But that subsection governs only preliminary breath tests. Consequently, we have addressed Evans's argument as if it were directed to AS 28.35.-032(a).

We disagree that the doctrine of implied repeal is appropriate here.[32] "[I]t is an established principle of statutory construction that all sections of an act are to be construed together so that all have meaning and no section conflicts with another."[33] Here, contrary to the State's argument, the two statutory provisions can be harmonized with one another and are not in direct conflict.

The retention of the language "a chemical test may not be given" in the refusal statute is consistent with the legislative intent to adopt the reasoning of Justice Compton's dissent in *Pena.* As already explained, Justice Compton did not see any conflict between the statutory limitations on law enforcement's power to administer warrantless chemical tests pursuant to the implied consent statutory scheme and the general authority of the courts to issue search warrants for a person's breath or blood upon a proper showing of probable cause.[34]

Our decision in *Pena* (which was reversed by the Alaska Supreme Court) similarly did not see any conflict between the statutory limitations to the police power to administer chemical tests to persons who have refused to submit to a blood test under AS 28.35.032(a) and the court's separate authority to issue search warrants for evidence of a crime under AS 12.35.020.[35] As Chief Judge Alex Bryner explained, "Both statutory provisions can be given full effect by reading AS 28.35.032(a) to restrict the use of chemical tests other than a breathalyzer only in situations where the implied

---

[32]  *See Allen v. Alaska Oil & Gas Conservation Comm'n*, 147 P.3d 664, 668 (Alaska 2006) (explaining doctrine of implied repeal under Alaska statutory construction principles).

[33]  *Bullock v. State, Dep't of Cmty. & Reg'l Affairs*, 19 P.3d 1209, 1215 (Alaska 2001) (quoting *In re Hutchison's Estate*, 577 P.2d 1074, 1075 (Alaska 1978)).

[34]  *Pena v. State*, 684 P.2d 864, 868-69 (Alaska 1984) (Compton, J., dissenting).

[35]  *Pena v. State*, 664 P.2d 169, 175 (Alaska App. 1983), *rev'd*, 684 P.2d 864 (Alaska 1984).

consent statute is relied on as the exclusive source of authority for subjecting a person to alcohol testing."[36] In other words, in situations where the police are relying on the implied consent statutory scheme as their authority for subjecting a person to alcohol testing, they are prohibited from administering non-consensual chemical tests to persons who have refused to submit to a breath test except in the circumstances listed in AS 28.35.035. But there are no such limitations to the court's authority to issue search warrants for chemical tests for which probable cause otherwise exists.

Our harmonized reading of these two statutory provisions is further bolstered by the legislative discussion surrounding a proposed amendment to AS 28.35.035 as part of the legislation that added subsection (h) to AS 28.35.031.

As explained above, AS 28.35.035 authorizes the police to compel a chemical test without a motorist's express consent under two circumstances: (1) if the motorist was involved in an accident that resulted in injury or death; or (2) if the motorist is unconscious or otherwise incapable of refusal. The sponsors of the 2001 bill proposed expanding the statutory exceptions listed under AS 28.35.035 to allow the police to compel a chemical test when "exigent circumstances" precluded the administration of a breath test.[37] This amendment was offered as an alternative way to address the situation in *Sosa*, where the breath-test machine was broken.[38] Chief Assistant Attorney General Dean Guaneli explained to the House Judiciary Committee that such an

---

[36]   *Id.*

[37]   C.S.H.B. 4, § 45, 22d Leg., 1st Sess. (as introduced, Feb. 28, 2001).

[38]   Supplemental Sponsor Statement of Rep. Norman Rokeberg for C.S.H.B. 4, 22d Leg., 1st Sess. (Feb. 6, 2001).

amendment to AS 28.35.035 "would allow, under exigent circumstances, for a blood sample to be taken without either the suspect's consent or a search warrant."[39]

Guaneli indicated, however, that the Department of Law considered this proposed amendment to be less important than the addition of subsection (h) to AS 28.35.031, which Guaneli characterized as "the important provision," in the proposed legislation. Guaneli also commented that adding a general exception for "exigent circumstances" to AS 28.35.035 "is more risky, legally, because [the police] would need to prove that the exigent circumstances exist[ed]."[40]

Ultimately, the legislature rejected this proposed expansion of police authority to compel chemical tests under AS 28.35.035. But the legislative discussion surrounding this proposed amendment further supports our conclusion that the legislature understood the distinction between the court's general authority to issue a search warrant for a chemical test of a person's breath or blood and the authority of the police to administer a warrantless chemical test as part of a search incident to a DUI arrest.

We accordingly conclude that the district court erred when it interpreted Alaska's implied consent law as restricting the court's authority to issue a search warrant for a chemical test of a person's blood upon a proper showing of probable cause. We therefore reverse the district court's order suppressing the results of the blood test

---

[39] Minutes of House Judiciary Committee, House Bill 4, testimony of Chief Assistant Attorney General Dean Guaneli, log no. 2201 (Mar. 29, 2001).

[40] *Id.*; s*ee also Birchfield v. North Dakota*, 136 S.Ct. 2160, 2174 (2016) (holding that the Fourth Amendment does not permit warrantless blood tests incident to arrests for drunk driving and any exigent-circumstances exception to warrant requirement is determined on a case-by-case basis); *Missouri v. McNeely*, 133 S.Ct. 1552, 1568 (2013) (holding that metabolization of alcohol in bloodstream does not create per se exigency to justify warrantless, non-consensual blood testing in all drunk-driving cases).

administered in Evans's case, and we remand this case to the district court for further proceedings on the criminal complaint against Evans.

*Conclusion*

The decision of the district court is REVERSED.