John Logan SPEERS, Wendell Fortney, and Rodney J. Mullins, Movants,

v.

COMMONWEALTH of Kentucky, Respondent.

No. 91–SC–038–DG.

Supreme Court of Kentucky.

April 9, 1992.

Jimmy Dale Williams, Richmond, for movants.

Chris Gorman, Atty. Gen., Garrett T. Fowles, Robert Russell, Thomas J. Smith, III, Asst. Madison County Atty., Richmond, for respondent.

SPAIN, Justice.

We granted discretionary review in these consolidated appeals to determine whether paramedics and phlebotomists fall within the class of persons authorized by KRS 189.520(6) to draw blood samples for the purpose of testing to determine the blood alcohol level of a DUI suspect. The second issue to be addressed only in the cases of Speers and Fortney is whether such blood alcohol test results are admissible evidence only if the subject tested has been arrested before the blood sample is taken, and what is encompassed within the term "arrested" as used in KRS 186.565, the "implied consent" statute.

On March 25, 1989, Mullins was arrested for speeding and for DUI. He was taken by the arresting officer to the Madison County Ambulance Service to have a blood alcohol test. A certified paramedic with the service drew a blood sample from Mullins.

Speers and Fortney had been involved in separate one-car accidents on March 9, 1989, and April 10, 1989, respectively. After failing a field sobriety test, Speers consented to a blood alcohol test. His blood was drawn by the same paramedic who had drawn blood from Mullins. Speers was then transported to the Pattie A. Clay Hospital where he received medical treatment. Fortney also consented to a blood alcohol test at the Pattie A. Clay Hospital where

he received medical attention and had his blood drawn by a trained phlebotomist. The record reveals that Speers and Fortney each were in custody prior to receiving a formal arrest citation from the police. Physical restraint was not required by the police at the hospital since neither Speers nor Fortney attempted to leave. When the blood samples were taken, Speers and Fortney were not comatose and both voluntarily consented to the blood alcohol tests.

The movants sought to suppress the admission of the blood tests but at a pretrial suppression hearing in the Madison District Court their motions were denied. Speers, Fortney, and Mullins then entered conditional guilty pleas to DUI. On appeal, their convictions were first affirmed by the Madison Circuit Court and, thereafter, by the Court of Appeals in a unanimous decision. We agree with the decisions of the lower courts, and affirm.

■ We first address the issue of whether phlebotomists and paramedics are within the class of persons who may draw blood from a DUI suspect. KRS 189.520, which establishes the various presumptions of intoxication, contained the following language in subsection (6) in 1989 when these cases arose:

*Only a physician, registered nurse or qualified medical technician,* **duly licensed** *in Kentucky, acting at the request of the arresting officer can withdraw any blood of any person submitting to a test under this section of KRS 186.565.*[1] (Emphasis added.)

All three movants argue that their test results were inadmissible because their blood was impermissibly drawn, since the phlebotomist and the paramedic do not fall within the class of a "physician, registered nurse or qualified medical technician." They insist that a strict interpretation of the statute would exclude a paramedic or phlebotomist from drawing and testing blood, since they are not licensed. The Commonwealth disagrees and argues that

---

**1.** Effective July 1, 1991, KRS 189.520(6) states: Only a physician, registered nurse, phlebotomist, medical technician, or medical technologist not otherwise prohibited by law can withdraw any blood of any person submitting to a test under this section.

a paramedic and a phlebotomist each fall under the category of a "qualified medical technician," and that the qualifying phrase "duly licensed" is meaningless, except as applied to physicians and registered nurses.

Whether a paramedic or phlebotomist is a "qualified medical technician" is a question of statutory interpretation. The legislature did not define in the statute what constitutes a "qualified medical technician," nor does the Kentucky Board of Medical Licensure recognize or license medical technicians, certified or not. The legislature's failure to define the ambiguous phrase "medical technician" gives credence to our interpretation that its intent was to include paramedics and phlebotomists in the class of "medical technicians." We believe that the phrase "duly licensed" was *intended* solely *to* modify the titles "physician" and "registered nurse" since these occupations are licensed by the Board of Medical Licensure. A "technician" is defined in Webster's Dictionary as a person who has learned the practical technical details and special techniques of an occupation. Webster's *Third New International Dictionary* (1965). A phlebotomist is trained to draw blood from the human body. Phlebotomists work primarily within hospitals, which are themselves highly regulated by federal and state laws. A hospital is required to adequately train and supervise its staff, including phlebotomists, in order to properly care for patients, to adhere to governmental regulations, and to avoid liability. A paramedic receives intensive training before being certified by the Commonwealth through its Board of Medical Licensure. Both phlebotomists and paramedics are "qualified" to work within their respective medical fields and can easily be classified as "medical technicians." To delete these classes of individuals from the statutory scheme would lead to an absurdity, and we are not required to give the statute such an interpretation. *See City of Owensboro v. Noffsinger*, Ky., 280 S.W.2d 517, 519 (1955).

The trained phlebotomist who drew blood from Fortney worked solely for the Pattie A. Clay Hospital. It was stipulated by Fortney and the Commonwealth that the phlebotomist's only task at the hospital was to withdraw blood for pathology purposes. The paramedic who drew blood from Speers and Mullins was highly trained and certified by the Commonwealth and, as a part of his occupation, routinely drew blood. We believe that these individuals were "qualified medical technicians" as set forth in KRS 189.520.

Speers and Fortney[2] next argue that the trial court erred in refusing to suppress the results of their blood tests because the blood samples were not taken after they were arrested, as required by KRS 186.565(1), the "implied consent" statute, which provides that:

> *Any person who operates a motor vehicle in this state is deemed to have given his consent to a test of his blood, breath, urine, or saliva* for the purpose of determining the alcoholic content of his blood, *if arrested* for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle in this state while under the influence of intoxicating beverages or other substances which may impair one's driving ability. (Emphasis added.)

Such an argument, first of all, completely ignores the fact that where actual, express consent is had, as in these cases, there is no need whatever to address the fiction of "implied consent."

Secondly, the legislative purpose of our "implied consent" law is to create a presumption, in the absence of express consent, that blood alcohol testing is lawful in DUI cases and that those who refuse such a test may have their operators' licenses revoked administratively. Further, as correctly observed by the Court of Appeals, "Nowhere in the motor vehicle statutes, however, is it stated that an actual arrest must take place before the test is administered for the results to be admissible at trial."

**2.** It is undisputed that Mullins was under arrest when his blood sample was drawn.

We agree with the Commonwealth and the lower courts that such an interpretation of the statute would defeat the intent of the legislature. We do not believe the "if arrested" clause requires the state to place an individual suspected of DUI under arrest prior to the suspect's having his blood drawn and tested. As the Court of Appeals aptly stated in its opinion, to apply such a construction to the statute "would lead to an anomalous or absurd result," with the police being required to take an injured DUI suspect first to jail for booking, and thereafter to a hospital for medical treatment. Furthermore, the state may seize without a warrant evanescent evidence which is likely to disappear before a warrant can be obtained, such as blood samples containing alcohol or fingernail scrapings. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). The statutory requirement of an arrest is necessary, in our view, only where the DUI suspect refuses by words or conduct to submit to a blood alcohol test in order for his refusal to trigger the administrative revocation of his privilege to operate a motor vehicle. KRS 186.565(3).

The implied consent statute does not infringe upon the constitutional rights of the DUI suspect. For the purposes of this statute, minimum due process requires probable cause to be established before the state can restrain and "search" a DUI suspect's body for evanescent evidence such as "blood, breath, urine, or saliva." Once probable cause has been established, the police then must establish that the consent to search the suspect's body has been "freely and voluntarily" given. *Schmerber, supra.* In *Schmerber,* the U.S. Supreme Court held that the Fifth and Fourteenth Amendments to the United States Constitution are not implicated by the taking of blood samples from the suspect of a crime.

Under the Fourth and Fourteenth Amendments, a search conducted without probable cause is *"per se* unreasonable" subject only to a few specifically established and well-delineated exceptions. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). (Emphasis in the original and citations omitted.) And if the search is found to be illegal, the evidence which is a product of the unconstitutional search will be excluded at trial. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However, the U.S. Supreme Court has recognized that there are specifically defined exceptions which have been carved out of this general rule. One of the exceptions is consent. *Schneckloth, supra* 412 U.S. at 243–244, 93 S.Ct. at 2056. The standard for determining whether consent under the Fourteenth Amendment is valid is found in *Schneckloth,* wherein the Supreme Court stated:

> We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it [the State] demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. *Id.* at 248–49, 93 S.Ct. at 2058–59.

Thus the question becomes whether the DUI suspect's consent has been freely and voluntarily given when reviewed under the *Schneckloth* standard. Applying that standard to the facts in Speers' and Fortney's cases, we find that there was no evidence of coercion, express or implied. Accordingly, the blood test results were clearly admissible at trial.

The decisions of the Court of Appeals, Madison Circuit Court, and Madison District Court are affirmed.

STEPHENS, C.J., and LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., join in this opinion.

COMBS and LEIBSON, JJ., dissent by separate opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The Majority Opinion misapplies the plain language of KRS 186.565, and is seriously flawed in its analysis of constitutional law search and seizure doctrine.

COMBS, Justice, dissenting.

I respectfully dissent. Section 29 of our constitution gives all legislative power to the General Assembly. Section 28 forbids us to exercise any legislative power. The plain wording of KRS 189.520(6) defines the groups authorized to withdraw blood. Paramedics and phlebotomists are *not* the duly licensed, qualified medical technicians mentioned in the statute. If the General Assembly had wanted to include them they could have done so. (The 1991 amendment to the statute, which in any event does not apply in this case, mentions phlebotomists but does not mention paramedics.) We have no rightful authority to substitute our views for those of the legislature, or to construe unambiguous statutes to suit ourselves.

I also disagree with the majority's treatment of KRS 186.565(1). First, by its own reasoning, the majority's holding that the statute is irrelevant here because express consent was freely and voluntarily given renders its analysis of the implied consent statute unnecessary. Second, the statute is not ambiguous, and therefore does not lend itself to judicial construction. Nevertheless, the majority in effect decrees ambiguity, despite the fact that the statute by its own pellucid terms operates to imply consent only *if* the subject is *arrested.* We are not at liberty to apply our "constructions" to such a statute. But even if we were, giving effect to the plain statutory language would not "lead to an anomalous or absurd result," as contended by the majority (ante at 6). If we are all free to speculate as to legislative intent, one might argue that the General Assembly made implied consent conditional upon arrest in order to satisfy the Fourth Amendment. For, as the majority itself points out, consent must be actual and voluntary when the subject is not in custody. Ante at 641.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The majority cites *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), for the proposition that evanescent evidence may be seized without consent and without a warrant. Given the holding here of express consent, the relevance escapes me, but in any event the majority fails to recognize that in *Schmerber* the defendant had been placed under formal arrest and advised of his constitutional rights, and that in *Cupp* the defendant, although not advised of his rights, was in custody at the police station, detained against his will with probable cause to believe that he had committed a felony, and with counsel present. *Cupp* was decided on the principle of *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which upheld a search incident to a valid *arrest.*

In my view, the majority's re-writing of the implied consent statute is not only gratuitous, but unconstitutional as well.