OPINION OF THE COURT BY JUSTICE HUGHES
*665 Suzanne Marie Whitlow appeals as a matter of right from the Fayette Circuit Court judgment sentencing her to twenty years in prison. Whitlow was driving while intoxicated in Lexington, Kentucky, when she struck and killed two pedestrians standing on a sidewalk. After the incident, Whitlow was transported to the hospital for minor injuries, and a police officer obtained a court order directing the hospital to test her blood for drugs and alcohol. Whitlow moved to suppress the blood test results, arguing that the "court order" was not a search warrant and therefore the testing violated her Fourth Amendment rights. The trial court denied her motion, and Whitlow entered a conditional guilty plea to four charges, including two counts of second-degree manslaughter, specifically preserving her right to appeal the denial of the suppression motion. Finding no error, we affirm the ruling of the trial court.
FACTS AND PROCEDURAL HISTORY
In the early morning hours of October 29, 2016, Whitlow operated a black Dodge vehicle which left the roadway and drove onto a city sidewalk, striking and killing a Louisville police officer and a University of Kentucky employee. After the incident, Whitlow was transported to the University of Kentucky Medical Center for treatment of minor injuries she sustained.[1] While at the hospital, a Lexington police officer met with Whitlow and immediately observed a strong odor of alcohol on her breath. The officer informed Whitlow of her rights and asked if she would be willing to speak with him. She gave verbal consent that she understood her rights and was willing to speak with the officer, but she refused to consent to the taking of a blood sample.
After the officer's conversation with Whitlow, he prepared an affidavit titled "Affidavit in Support of and Petition for Court Order." The affidavit, in its entirety, states:
Comes the affiant, a peace officer of the Lexington Police Department, who personally appeared before the undersigned and being first duly sworn now on oath deposes and affirms the information contained herein is completely truthful based upon facts discovered during an open investigation and based on this information is seeking a court ordered blood draw from the below listed motor vehicle operator involved in a fatal motor vehicle collision pursuant to KRS 189A. 105(3)(b).
Pursuant to KRS 189A.105(3)(b) affiant is seeking the following:
• Alcohol in the blood of; Whitlow, Suzanne, SSN (redacted), 01/21/90
• Controlled substance in the blood of; Whitlow, Suzanne, SSN (redacted), 01/21/90
• Controlled substance in the body of;
• Physical evidence in the body of;
• Controlled substance in the urine of;
Affiant has been an officer in the aforementioned agency for a period of 17 years and the information and observations contained herein were received *666 and made in his/her capacity as an officer thereof.
On the 29th day of October, 2017 (sic) at approximately 2:34 am, affiant received information from/observed:
A Collision Reconstruction Unit call out was initiated concerning a collision which occurred on South Upper Street between Bolivar and Scott Street. The collision involved a black 2010 Dodge passenger vehicle versus two pedestrians. Both pedestrians were killed as a result of the collision.
Ms. Suzanne Whitlow was the only person present with the vehicle upon officers' arrival and was transported to the University of Kentucky Emergency Room to be checked out for injuries; she was bleeding from the face. Ms. Whitlow made conflicting statements to initial responding officers indicating she was not driving at the time of the collision but later stated that she was driving. Officers indicated she exhibited signs of being under the influence of intoxicants.
Responding to the hospital, I met with Ms. Whitlow and immediately observed a strong odor of alcoholic beverages on her breath and person. I explained to Ms. Whitlow her rights in accordance with the Miranda court precedence (sic) and asked if she would be willing to speak to me. She gave verbal consent that she understood her rights and was willing to speak with me.
Ms. Whitlow exhibited very slurred speech and her ability to communicate was extremely choppy with her continued tangents and inability to string together continued coherent thoughts and explanations. She told this investigator she was not the driver but then also admitted that she "might have told the police officer I was driving." She explained that an unknown person was driving her vehicle.
Witness, Michael Ruhe, a paramedic for the University of Kentucky Hospital was riding in an ambulance and behind the black Dodge when the collision occurred. He saw the car bounce off the brick wall and come to a rest. He immediately jumped out of the ambulance and went to the black car to set the emergency brake and turn the car off. He says only one person was in the vehicle when he got up to it and that he is certain there were no other persons in it. He described the person as sitting in the driver's seat with her feet in the floorboard but her body slumped over into the passenger's seat. He gave a matching physical description and clothing description of Ms. Whitlow.
Ms. Whitlow had only one shoe on when transported to the University of Kentucky Hospital. She confirmed the one shoe in her room was her shoe when asked; the matching shoe was observed in the driver's floorboard of the vehicle. Ms. Whitlow is also one of the two registered owners of this vehicle. Ms. Whitlow has facial injuries from which she is bleeding and the driver's airbag was observed to have blood on it.
Affiant has reasonable and probable cause to believe that grounds exist for the issuance of a Court Order pursuant to KRS 189A.105(3)(b) which states a motor vehicle accident in which there is a fatality or physical injury the court is not prohibited from issuing a court order requiring blood or urine testing; in a motor vehicle accident in which there is a fatality, the investigating officer shall seek a search warrant for blood, breath or urine testing unless the testing has already been done by consent; and to obtain and preserve the aforementioned evidence, based on the aforementioned facts information and circumstances and prays that a Court Order be issued, that the evidence be removed from the *667 above-mentioned person and delivered into the custody of the Lexington Police Department and brought before any Court and/or retained subject to order of said Court, such substances being evidence in the matter of the violation of the laws of the Commonwealth of Kentucky.
The officer signed the affidavit, which was subscribed and sworn to before a Fayette District Court judge on October 29, 2016, at 5:30 a.m. The judge then issued a "Court Order," which states as follows:
To: Whitlow, Suzanne, SSN (redacted), 01/21/90 and University of Kentucky Hospital Staff
Proof having been made before me by a peace officer of the Lexington Police Department, that there is probable and reasonable cause for the issuance of this Court Order as set forth in the affidavit attached hereto and made part hereof as if fully set out herein; you are commanded to have a blood sample removed from your person by the University of Kentucky medical staff and released to members of the Lexington Police Department Collision Reconstruction Unit to obtain the following evidence: a blood sample for testing for intoxicating substances in your body and upon removal of same, you are ORDERED to deliver such evidence into the custody of Officer (redacted), who shall take possession of it and retain it in his custody subject to a subsequent order of this Court or the Fayette Circuit Court, or to have the sample tested for intoxicating substances by the Kentucky State Police Lab, until further order of this Court or the Fayette Circuit Court, such evidence being pertinent to an offense against the peace and dignity of the Commonwealth of Kentucky.[2]
The order was signed by the district court judge at 5:30 a.m. on October 29, 2016, and executed by the officer, who took possession of the blood sample taken from Whitlow by a nurse at the hospital. Whitlow's blood alcohol content was tested approximately three hours after the incident and measured 0.237 grams per 100 milliliters, nearly three times the legal limit.
On February 7, 2017, Whitlow was charged with two counts of second-degree manslaughter, one count of operating a motor vehicle under the influence of alcohol with aggravating circumstances, second offense, and being a persistent felony offender in the second degree (PFO II). On April 24, 2017, Whitlow filed a motion to suppress the blood test, asserting that the taking of her blood pursuant to the court order violated her Fourth Amendment rights. Whitlow and the Commonwealth submitted briefs on the issue, and the trial court conducted a hearing on June 8, 2017.
Whitlow argued correctly that the statute cited by the officer in the affidavit, Kentucky Revised Statute (KRS) 189A.105(3)(b), is not an actual statute because while there is a paragraph (3), there is no subsection (b) in that paragraph. Further, Whitlow stated that the applicable statute, KRS 189A.105(2)(b), provides no authority for a court to issue a "court order" to obtain a blood sample and that absent the requisite search warrant, the blood test violated the Fourth Amendment. The Commonwealth responded that in this case, a search warrant and a court order were synonymous but even if the court held otherwise, the blood test was conducted in good faith as a result of reasonable reliance on the court's order.
At the conclusion of the hearing, the trial court orally denied the motion to suppress the blood test. The trial court determined that the best practice is for officers *668 to obtain a search warrant, since KRS 189A.105(2)(b) says "shall seek ... a search warrant." However, the failure to obtain an actual search warrant was not a fundamental flaw because the officer provided accurate information in the affidavit and did not make incorrect statements with respect to the probable cause, which justified the blood test. The trial court found that the good faith exception outlined in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applied to the execution of the court order. In a written order on June 9, 2017, the trial court denied the motion to suppress for the reasons stated on the record.
Following issuance of the order, Whitlow entered a conditional guilty plea to all charges, specifically reserving the right to appeal the denial of the suppression motion. The trial court entered a final judgment on the conditional guilty plea, convicting Whitlow of two counts of second-degree manslaughter, one count of operating a motor vehicle under the influence of alcohol with aggravating circumstances, second offense, and being a PFO II, and imposing a total prison sentence of twenty years.
Whitlow now appeals as a matter of right, the sole issue being whether the trial court erred in denying her motion to suppress the blood test.
ANALYSIS
The standard of review of a pretrial motion to suppress is twofold. "First, we review the trial court's findings of fact under a clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. We then conduct a de novo review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law." Simpson v. Commonwealth, 474 S.W.3d 544, 547 (Ky. 2015) (citations omitted).
As noted, the written order stated that the motion to suppress was denied for the reasons stated on the record. At the hearing, the trial court made several findings of fact and concluded that while a search warrant is a type of court order, search warrants and court orders are not the same. However, the failure to obtain a document entitled "search warrant" was not a fatal flaw because the police provided complete and accurate information that the district court judge relied on in finding probable cause for issuing the court order authorizing the testing. The trial court further found that the Leon exception applied because it was reasonable to rely on the decision of the district court judge and execute the court order. Finally, the trial court stated that the best practice for police is to follow the statute literally and obtain a search warrant.
Whitlow argues that the trial court erred as a matter of law in holding that KRS 189A.105(2)(b) did not require law enforcement to obtain a search warrant. KRS 189A.105(2)(b) states:
Nothing in this subsection shall be construed to prohibit a judge of a court of competent jurisdiction from issuing a search warrant or other court order requiring a blood or urine test, or a combination thereof, of a defendant charged with a violation of KRS 189A.010, or other statutory violation arising from the incident, when a person is killed or suffers physical injury, as defined in KRS 500.080, as a result of the incident in which the defendant has been charged. However, if the incident involves a motor vehicle accident in which there was a fatality, the investigating peace officer shall seek such a search warrant for blood, breath, or urine testing unless the testing has already been *669 done by consent. If testing done pursuant to a warrant reveals the presence of alcohol or any other substance that impaired the driving ability of a person who is charged with and convicted of an offense arising from the accident, the sentencing court shall require, in addition to any other sentencing provision, that the defendant make restitution to the state for the cost of the testing.
During the suppression hearing, both parties stipulated that probable cause existed to justify the blood test. But Whitlow argues that pursuant to this statute, the officer was required to obtain a search warrant, not a court order, to authorize the blood test.
The Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution guarantee the individual right to be free from unreasonable searches and seizures.[3] Taking a sample of a person's blood is indisputably a search. Birchfield v. North Dakota, --- U.S. ----, 136 S.Ct. 2160, 2173, 195 L.Ed.2d 560 (2016). Blood tests require piercing the skin and extracting part of the subject's body, making a blood test significantly more intrusive than other methods used for determining a person's blood alcohol content. Id. at 2178. Generally, warrantless searches are unreasonable unless the search falls under one of the exceptions to the warrant requirement. Commonwealth v. Hatcher, 199 S.W.3d 124, 126 (Ky. 2006). The United States Supreme Court has identified three requirements within the language of the Fourth Amendment that must be met for a valid warrant: (1) the warrant must be based on probable cause; (2) the warrant must be supported by a sworn affidavit; and (3) the warrant must contain a particular description of the place to be searched or the items to be seized. Groh v. Ramirez, 540 U.S. 551, 557, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).
While a search warrant is a type of court order, obviously not all court orders constitute search warrants. Here, the court order relied upon to test Whitlow's blood was not labeled "search warrant," but in substance that is exactly what it was. Probable cause existed to justify the blood test, and the police officer completed a detailed affidavit and petition, subscribed and sworn to before a neutral magistrate, which outlined the probable cause and the specific item to be seized, i.e. , a sample of Whitlow's blood. Further, the court order provided particularized information regarding the search, what the blood sample was to be tested for, and what to do with the sample once taken. All requirements for a valid warrant were met. Id. In short, even though the court order was not titled "search warrant," it had all the essential elements of a valid warrant, and consequently the trial court properly denied the motion to suppress.
To overcome the obvious substance and import of the court order issued by the Fayette District Court judge, Whitlow raises several arguments. We find these *670 arguments unconvincing but address each in turn.
Whitlow first argues that the affidavit and resulting court order were defective due to the officer's citation of improper legal authority, i.e., KRS 189A.105(3)(b) when that statute does not contain a subsection (3)(b). Because the officer cited subsection (3)(b) instead of subsection (2)(b), Whitlow contends that the district court judge could not rely on the affidavit as a valid legal basis for the issuance of the court order regarding the blood test. We disagree. The officer's erroneous citation to KRS 189A.105(3)(b) is not a substantial deficiency because he included language taken directly from the correct statute, KRS 189A.105(2)(b) ; his reference to subsection (3)(b) is nothing more than a simple typographical error. This miscitation argument and Whitlow's companion argument regarding the title of the court order commanding the blood test are both hyper-technical arguments entitled to little weight. Certainly, neither is a basis for invalidating an otherwise proper search warrant.
As this Court recently stated, "[a]ffidavits are often done in haste. And most warrants are issued 'on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings. And, at any rate, how do the technical refinements actually assist a judge in determining probable cause?' " Abney v. Commonwealth, 483 S.W.3d 364, 368 (Ky. 2016) (quoting Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983) ). Additionally, this Court has noted the importance of being able to obtain promptly certain evidence that is evanescent, like blood samples containing alcohol. Speers v. Commonwealth, 828 S.W.2d 638, 641 (Ky. 1992).[4] While the officer in this case erred in citing the wrong subsection of the controlling statute, and by labeling the petition as one for a court order, rather than more accurately a search warrant, the constitutionally essential elements of a warrant were present both in the officer's petition/affidavit and the court order commanding the blood test.
Notably, the trial court identified a logical reason for why the officer chose the label "court order" instead of "search warrant." The first sentence of KRS 189A.105(2)(b) states that nothing in subsection (2) shall prohibit a judge "from issuing a search warrant or other court order requiring a blood or urine test...." (Emphasis supplied.) The first and second sentences of the subsection can, at first glance, be difficult to reconcile, given that the first sentence states "search warrant or other court order" when there has been a motor vehicle fatality, while the second sentence states that the officer "should seek such a search warrant...." The two sentences are partially repetitive and can reasonably leave a reader confused as to whether the officer shall seek a court order or search warrant in situations like this one.[5] Given the nature of the evidence being sought, and the urgency of the situation, the officer likely acted with haste, but *671 his missteps in no way obscured the substance of what had occurred and the legitimacy of the ensuing court-ordered seizure of a sample of Whitlow's blood.
To further bolster her argument, Whitlow states that the officer understood the difference between a court order and a search warrant, given that the trial court record includes search warrants for Whitlow's cellular phone, vehicle, and Facebook account. The format and information included in these search warrants, however, is very similar to the format and information used in the petition for the court order to obtain the blood test. The affidavits for the search warrants include descriptions of the items to be seized or places to be searched, and include the same observations/facts, with few additions, that the petition for the court order regarding blood testing included. The presence of other warrants does nothing to detract from the substance of the challenged court order.
Next, Whitlow cites to Carpenter v. United States, --- U.S. ----, 138 S.Ct. 2206, 2208, 201 L.Ed.2d 507 (2018), to reiterate that court orders and search warrants are not synonymous. In Carpenter, the government sought cell phone records to establish from cell tower data that a defendant was near four robbery locations at the time the robberies occurred. Id. The government obtained a court order under the Stored Communications Act and then used the evidence at trial to obtain a conviction. Id. at 2209. On certiorari, the Supreme Court held that acquisition of the cell-site records was a Fourth Amendment search and the government must generally obtain a search warrant before acquiring certain phone records. Id. at 2221.
Significantly, the Supreme Court noted that the issues presented in Carpenter did not fit neatly under existing search and seizure precedent due to the unique nature of cell phone location records. Id. at 2209, 2217. Further, the Supreme Court quoted its decision in Riley v. California, 573 U.S. 373, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), stating "[a] search of the information on a cell phone bears little resemblance to the type of brief physical search considered in prior precedents." Id. at 2222. The prior precedent referred to in Riley is a case that involved the search of a cigarette pack found on the defendant's person. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973). Although Carpenter addressed the sufficiency of a court order in lieu of a search warrant, given the unique nature of cell phone location data, the Supreme Court's holding in Carpenter has no bearing on the present case involving a physical search for blood following motor vehicle fatalities.
Whitlow next argues that the trial court order for the blood test violates the separation of powers doctrine. In Combs v. Commonwealth, 965 S.W.2d 161, 163 (Ky. 1998), this Court determined that
[t]he Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution assure the people that they will be free from all unreasonable search and seizure. To support such an assurance, these constitutional provisions mandate that the executive branch must first obtain a warrant based on probable cause before it conducts any search or seizure. Neither constitution grants the executive branch the right to seek a search warrant nor the judiciary the right to issue one, but rather the constitutional sections place restrictions on when the executive branch of the government can conduct any search or seizure.
Generally, the requirements that search warrants be issued by a neutral magistrate and be supported by probable cause function as a check on the power of the executive *672 branch. Whitlow contends that the court order for the blood test violates the doctrine of separation of powers because the order fails to place any constitutional restrictions on law enforcement officers. The court order directed Whitlow to submit to blood testing and directed the hospital to obtain the blood sample and provide it to law enforcement officials, rather than directing the officers to take some particular action.
While it is true that the court order primarily directs action on the part of the hospital, the record reflects that Whitlow was already at the hospital when the affidavit and petition for court order were submitted. As noted, Whitlow was transported to the hospital for minor injuries and was in police custody at the time the court order was issued. It was unnecessary for the court to order a law enforcement officer to transport Whitlow to a medical facility for a blood sample when she was already at the hospital. In any event, directing the officer to take possession and control of the blood sample after it was taken was certainly a directive to members of the executive branch. No violation of the separation of powers occurred.
Whitlow further relies on Birchfield, 136 S.Ct. at 2172, to support her argument that the court order and subsequent blood test violated her Fourth Amendment rights. In Birchfield , the Supreme Court reviewed three consolidated cases and considered whether a motorist could be compelled to submit to a breath test or the taking of a blood sample without a search warrant. Id. at 2185. The Supreme Court held that a breath test, but not a blood test, can be administered as a search incident to arrest without a warrant. Id. Here our determination that the court order functioned as a valid warrant renders the "incident to arrest" exception to the warrant requirement addressed in Birchfield irrelevant to our analysis.
Finally, we note that the trial court invoked the good faith exception to the exclusionary rule as further grounds for its denial of the suppression motion. In Leon , officers relied on a facially valid search warrant to search several homes and automobiles for items related to drug trafficking. 468 U.S. at 902, 104 S.Ct. 3405. The search produced large quantities of drugs, and the defendants sought to suppress the evidence. Id. The Supreme Court held that evidence should not be suppressed if obtained by officers relying on a facially valid warrant even though the underlying affidavit was insufficient to establish probable cause. Id. at 922, 104 S.Ct. 3405. The Leon Court explained that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable...." Id. at 922-23, 104 S.Ct. 3405 (internal citations omitted). "[S]uppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926, 104 S.Ct. 3405.
Here, the officer's affidavit included numerous facts and observations establishing probable cause to justify the blood test. None of the information included in the affidavit was false or misleading, and the officer's belief that probable cause existed, a belief confirmed by the judge who signed the order, was not unreasonable. The Leon good faith exception need not be invoked because the affidavit and ensuing order were not deficient.
In sum, we are persuaded that the trial court's findings of fact regarding the court order for the blood test were supported by substantial evidence. Probable cause was not contested, and despite an improper label, the court order was for all intents and purposes a valid search warrant. No *673 technical or procedural violations of Whitlow's Fourth Amendment rights occurred, despite Whitlow's asserted hyper-technical deficiencies. The officer obtained a valid search warrant, even though it was labeled as a court order, before the blood test was administered. Based on the established facts and existing law, the trial court properly denied the motion to suppress.
CONCLUSION
For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.
All sitting. All concur.

Whitlow claims that following the incident, she was arrested and then transported to the hospital. The uniform citation states that the violation time for two counts of manslaughter and one count of operating a motor vehicle under the influence was 2:34 a.m., and the time of arrest was approximately 5:30 a.m.

The officer's name and Whitlow's social security number have been redacted.

The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const . amend. IV. Further, the Kentucky Constitution provides that "[t]he people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." Ky. Const. § 10.

Speers was rendered prior to Missouri v. McNeely, 569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), wherein the Supreme Court held that the natural dissipation of alcohol from the bloodstream does not always constitute exigent circumstances justifying a warrantless search. However, Speers ' emphasis on prompt testing in these circumstances remains valid.

The first sentence authorizes seeking a search warrant or court order for urine and/or blood testing where the defendant is charged with driving under the influence and "a person is killed or suffers physical injury." KRS 189A. 105(2)(b). The second sentence pertains to blood, breath or urine testing where the incident resulted in a fatality. Id.