RENDERED: NOVEMBER 15, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2023-CA-1221-MR

COMMONWEALTH OF KENTUCKY                                  APPELLANT

APPEAL FROM PERRY CIRCUIT COURT
v.      HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 23-CR-00086

MALISSA CHAPMAN                                            APPELLEE

AND

NO. 2023-CA-1448-MR

COMMONWEALTH OF KENTUCKY                                  APPELLANT

APPEAL FROM PERRY CIRCUIT COURT
v.      HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 23-CR-00085

GARY CHAPMAN                                              APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, ECKERLE, AND GOODWINE, JUDGES.

ECKERLE, JUDGE:  Appellant, the Commonwealth of Kentucky (the

"Commonwealth"), seeks review of separate Perry Circuit Court orders granting

the motions of Appellees, Gary Chapman and Malissa Chapman[1] (collectively the

"Chapmans"), to suppress evidence seized from a search of their residence.  For

the reasons set forth herein, we reverse and remand with directions to deny the

motions to suppress and for additional proceedings as necessary.

FACTUAL AND PROCEDURAL BACKGROUND

On December 3, 2022, at approximately 11:32 p.m., Hazard Police

Sergeant Jordan Childers ("Sergeant Childers") applied for a search warrant for the

Chapmans' residence based on suspicion of trafficking narcotics.  Sergeant

Childers submitted the warrant application on AOC Form 340, along with an AOC

Form 335 affidavit.  In the warrant application, Sergeant Childers attested to

obtaining information that the Chapmans were trafficking drugs.  Sergeant Childers

---

[1] The Commonwealth's Notice of Appeal incorrectly identifies an Appellee as "Melissa" Chapman.  The correct spelling of Appellee's first name is "Malissa."

also attested to surveying the Chapman residence for several days during which he observed activities that in his experience and training were consistent with drug trafficking.

Upon review, a Perry District Court Judge issued the search warrant. Approximately 90 minutes later, at or around the time of 1:00 a.m. on December 4, 2022, Sergeant Childers, along with other officers, executed the warrant and searched the Chapmans' residence. Sergeant Childers knocked on the door and announced his presence several times, including the shouting of his identification. After awaiting a response from within, and receiving none, law enforcement forcibly entered the door to effectuate the search warrant at or around approximately 1:15 a.m. Upon entering, law enforcement swept the area for occupants, but located none. Sergeant Childers read the warrant aloud in the empty home. Law enforcement then conducted the search and seized eight items. Sergeant Childers placed the warrant in a conspicuous location prior to departing the premises.

The fruits of the search led to the indictment of the Chapmans on identical charges of first-degree trafficking in heroin, first-degree trafficking in fentanyl or carfentanil, first-degree possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. The Chapmans filed separate motions to suppress evidence seized from the search, arguing that the warrant was

executed in violation of Kentucky Revised Statute ("KRS") 455.180. The Commonwealth countered, *inter alia*, that KRS 455.180 was inapplicable because law enforcement obtained and effectuated a "regular" warrant and provided sufficient notice by virtue of law enforcement's repeated knocks on the door and announcement of police presence.

The Trial Court held separate hearings on the Chapmans' respective suppression motions. Sergeant Childers served as the sole witness at both evidentiary hearings. He testified to the events preceding his application of the subject warrant and the consequent execution thereof. The Trial Court ultimately granted the Chapmans' motions for suppression of evidence, ruling that the search circumvented the requirements of KRS 455.180 due to law enforcement's "entry without notice."[2] As discussed more fully herein, the Trial Court assigned a legal definition to the word "notice" as used in KRS 455.180.[3] The Trial Court ruled that law enforcement's knocks and announcements did not qualify as "notice" under KRS 455.180 because no one was present at the Chapman residence to receive notice at the time the search was effectuated. Said differently, the Trial Court relegated law enforcement's effectuation of the warrant as a "without notice"

---

[2] While the Trial Court's orders contain identical rulings and parallel reasoning, the Trial Court utilized additional analysis in its order granting Gary Chapman's motion to suppress.

[3] The Trial Court specifically defined the term "notice" in the Gary Chapman order. *See* Gary Chapman Record ("G.C.R.") 73-74.

entry, thereby implicating the confines of KRS 455.180. Consequently, as the subject warrant did not meet the requirements of KRS 455.180, nor were there exigencies at play, the Trial Court ruled that exclusion of the seized evidence was proper pursuant to Kentucky Rules of Evidence 410A.

The Commonwealth subsequently filed separate appeals from both orders granting suppression. This Court consolidates Gary Chapman's and Malissa Chapman's appeals pursuant to the Kentucky Rules of Appellate Procedure 2(F)(2) for purposes of assignment to the same panel and issuance of a single Opinion.

STANDARD OF REVIEW

In reviewing the Trial Court's orders granting the Chapmans' motions to suppress, this Court follows a two-step analysis. First, we review the Trial Court's findings of fact for clear error. *Whitlow v. Commonwealth*, 575 S.W.3d 663, 668 (Ky. 2019). Second, we conduct a *de novo* review of the Trial Court's application of the law to the facts. *Id.* A "*[d]e novo* [review] affords 'no deference to the trial court's application of the law to the established facts.'" *Commonwealth v. Bembury*, 677 S.W.3d 385, 391 (Ky. 2023) (quoting *Horn v. Commonwealth*, 240 S.W.3d 665, 669 (Ky. App. 2007)). In the case before us, where the findings of fact are supported by substantial evidence, "the question necessarily becomes, 'whether the rule of law as applied to the established facts is or is not

-5-

violated.'" *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998) (quoting

*Ornelas v. United States*, 517 U.S. 690, 697 (1996)).

ANALYSIS

Neither party alleges error in the Trial Court's factual findings, nor do

the parties contest that law enforcement obtained a valid search warrant. Rather,

the central issue of law is whether law enforcement's execution of the warrant was

unconstitutional or in violation of KRS 455.180.

I.    ***Constitutional Reasonableness of Law Enforcement's Effectuation of the Search Warrant***

Our analysis begins with the constitutionality of the search. The

Fourth Amendment to the United States Constitution and Section 10 of the

Kentucky Constitution provide, in relevant part, that people have the right to be

secure in their persons, houses, papers, and effects against unreasonable searches

and seizures. The cornerstone of our analysis, therefore, is the reasonableness of

law enforcement's method of execution of the search warrant. *United States v.*

*Ramirez*, 523 U.S. 65, 71 (1998). As part of the reasonableness inquiry, law

enforcement's announcement must be considered. *Wilson v. Arkansas*, 514 U.S.

927, 929 (1995). To pass constitutional muster, it is well-established law that prior

to entering a dwelling forcibly pursuant to a valid warrant, absent exigent

circumstances, law enforcement must first knock on the door and announce their

identity and purpose. *Adcock*, 967 S.W.2d at 8 (citing *Wilson*, 514 U.S. at 933).

-6-

This principle, commonly referred to as the "knock-and-announce rule," requires notice "in the form of an express announcement by the officers of their purpose for demanding admission." *Miller v. United States*, 357 U.S. 301, 309 (1958). The rule aims to provide occupants of the premises subject to a search warrant sufficient time to open the door voluntarily. *Wilson*, 514 U.S. at 931.

The knock-and-announce rule has three purposes: "(1) to protect law enforcement officers and household occupants from potential violence; (2) to prevent the unnecessary destruction of private property; and (3) to protect people from unnecessary intrusion into their private activities." *Adcock*, 967 S.W.2d at 8. The rule "serves to respect the sanctity of a person's home by affording *notice* to those inside so that they may open the door peaceably and without the needless destruction of property, as well as by avoiding the possibility of a violent confrontation if those inside mistook the police for intruders." *United States v. Spikes*, 158 F.3d 913, 925 (6th Cir. 1998) (emphasis added).

We must note that the knock-and-announce rule has been codified in the federal context pursuant to 18 United States Code ("U.S.C.") § 3109. However, Kentucky has implemented the principle through case law mirroring that of the United States Supreme Court's knock-and-announce framework. *See generally Adcock*, 967 S.W.2d 6 (citing *Richards v. Wisconsin*, 520 U.S. 385 (1997)). Accordingly, absent exigency, law enforcement must knock and receive

an actual refusal or wait during the time necessary to infer one. *United States v. Banks*, 540 U.S. 31, 43 (2003). Where there is no answer to a knock and announce, law enforcement may proceed with executing the search warrant by forceable entry. *See Parks v. Commonwealth*, 192 S.W.3d 318, 334 (Ky. 2006) (citing *Adcock*, 967 S.W.2d 6).

In the case *sub judice*, there is no argument, or evidence for that matter, that law enforcement did not comply with the knock-and-announce rule prior to entering the Chapman residence by force. As the Trial Court's factual findings demonstrate, law enforcement obtained a valid warrant to search the residence and effectuated the search upon obtaining authority and a risk assessment evaluation. Law enforcement knocked and announced their presence and waited for a response prior to entering the front door with force. Based upon the constitutional principles that bind this Court, we hold that law enforcement acted reasonably in effectuating the valid search warrant.

Regarding other reasonableness factors that the Trial Court considered, we find no authoritative support for the proposition that law enforcement is precluded from effectuating a valid search warrant in the middle or night or in the event that all occupants are absent from the premises. *See, e.g., Bailey v. United States*, 568 U.S. 186, 190 (2013) (search team executed search warrant of apartment after observing occupants, who had no knowledge of the

impeding search, had left the premises). In addition, the Kentucky Supreme Court has expressly rejected the notion that law enforcement can only "go to the premises in the daytime, knock on the door and announce who they are and the purpose of their presence." *Commonwealth v. Gross*, 758 S.W.2d 436, 437 (Ky. 1988). As the Court stated, "[t]his is not the law in Kentucky, and never should be." *Id.* Furthermore, and as is clearly apparent from its plain language discussed below, KRS 455.180 does not prohibit effectuating a search a warrant past 10:00 p.m. and before 6:00 a.m. On the contrary, KRS 455.180(5) explicitly authorizes entry without notice between the hours of 10:00 p.m. and 6:00 a.m. if the reviewing court finds the statutory criteria are met.

Again, we find that law enforcement effectuated the search warrant within applicable constitutional parameters.

## II. Application and Interpretation of KRS 455.180

Having determined that execution of the subject search warrant was constitutionally permissible, we now focus on the Trial Court's application of KRS 455.180. In 2021, in the wake of national outrage following the death of Breonna Taylor, the Kentucky General Assembly enacted KRS 455.180, 455.190, and 455.200 to address "no-knock warrants." For purposes of our review, we must focus on the language of KRS 455.180, which states the following:

> Arrest or search warrant authorizing entry without notice;
> requirements for issuance

No arrest warrant or search warrant shall be issued authorizing entry without notice unless:

(1) The court finds by clear and convincing evidence that:

(a) The crime alleged is a crime that would qualify a person, if convicted, as a violent offender . . .  [or crime of terrorism or the use of a weapon of mass destruction]; and

(b) As established by facts specific to the case, giving notice prior to entry will endanger the life or safety of any person, or result in the loss or destruction of evidence sought that may give rise to a charge of a crime that would qualify a person, if convicted, as a violent offender . . . ;

(2) The law enforcement officer seeking the warrant has obtained the approval of his or her supervising officer, or has the approval of the highest ranking officer in his or her law enforcement agency;

(3) The law enforcement officer seeking the warrant has consulted with the Commonwealth's attorney or county attorney for the jurisdiction for which the warrant is sought, or with an assistant Commonwealth's attorney or assistant county attorney for the jurisdiction for which the warrant is sought;

(4) The law enforcement officer seeking the warrant discloses to the judge, as part of the application, any other attempt to obtain a warrant authorizing entry without notice for the same premises, or for the arrest of the same individual;

-10-

(5) The warrant authorizes that the entry without notice occur only between the hours of 6 a.m. and 10 p.m., except in exigent circumstances where the court makes the findings set forth in subsection (1) of this section and the court further finds by clear and convincing evidence that there are substantial and imminent risks to the health and safety of the persons executing the warrant, the occupants of the premises, or the public that justify the entry without notice occur during other hours designated by the court; and

(6) If the warrant is not issued electronically pursuant to KRS 455.170, the warrant includes the legibly printed name and signature of the judge.

A plain reading of the statute clearly establishes that search warrants authorizing entry "without notice" require greater justification for the governmental intrusion. Based on the factual findings of the Trial Court, we agree that law enforcement did not meet the heightened criteria of KRS 455.180. However, we find that KRS 455.180 was inapplicable for two reasons. First, Sergeant Childers applied for, and obtained, the subject warrant using AOC Form 340, which did not authorize entry without notice. *Compare* AOC Form 340 *with* AOC Form 340.1, Search Warrant Authorizing Entry Without Notice. Second, and as discussed in detail below, we find that law enforcement effectuated the search warrant *with* notice, thereby rendering KRS 455.180 inapposite in evaluating the lawfulness of the subject search.

-11-

The crux of the Trial Court's application of KRS 455.180 centers on its interpretation of what constitutes "entry without notice." The Trial Court made the dispositive legal conclusions that KRS 455.180 required law enforcement to provide the Chapmans – or perhaps any occupant of the residence – actual or constructive notice of the search warrant prior to entry. The Trial Court utilized the definition of "notice" as found in BLACK'S LAW DICTIONARY, stating that "notice of a fact or condition [occurs] if that person (1) has actual knowledge of it; (2) has received information about it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or record." G.C.R. 74.

As applied to the facts, the Trial Court reasoned that law enforcement's knock and announcements were insufficient since there was no person inside the dwelling to receive actual notice of the search warrant. Consequently, the Trial Court concluded law enforcement's forced entry was an "entry without notice" subject to the confines of KRS 455.180. We disagree with the Trial Court's interpretation of the phrase "entry without notice."

An Appellate Court's foremost duty when interpreting the meaning of a statute "is to determine and effectuate legislative intent . . . ." *Kindred Healthcare v. Harper*, 642 S.W.3d 672, 680 (Ky. 2022) (quoting *Sweasy v. Wal-Mart Stores, Inc.*, 295 S.W.3d 835, 838 (Ky. 2009)). In addition, we are bound by

subsection (1) of KRS 446.080, which directs that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" Further, the words in a statute are to be interpreted "according to the common and approved usage of language," except for technical words, which are interpreted according to their "peculiar and appropriate meaning in the law[.]" KRS 446.080(4).

Unfortunately, the terms "notice" and "without notice" are not defined in KRS Chapter 455, despite the terms' various technical meanings depending upon the legal context in which they are used. *See, e.g.*, *Federal Land Bank of Louisville v. Hardin-Mapes Coal Corp.*, 817 S.W.2d 225 (Ky. 1991) (discussing notice as it relates to a holder in due course). We find no reason to assign a technical meaning to the term "notice" as used in KRS 455.180; rather, the common and ordinary meaning as found in the standard dictionary must be utilized pursuant to KRS 446.080(4). The ordinary definition of "notice" means to give "warning or intimation of something." *Notice*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/notice (last visited Oct. 8, 2024). Thus, we find that "entry without notice" simply means entry without warning. With this meaning in mind, and in considering KRS Chapter 455 as a whole, entry without warning is clearly the equivalent of a common law, "no-knock" warrant. *See Lewis v. Jackson Energy Co-op. Corp.*, 189 S.W.3d 87, 92

(Ky. 2005) (stating that in reviewing legislative enactments, courts must look to the statutory scheme as a whole); *see also Richards*, 520 U.S. at 394-95 (explaining that a no-knock warrant is a judicial process authorizing a police officer to enter a premises without prior announcement for reasons including officer and public safety). In other words, we find the plain language of KRS 455.180 applies where law enforcement does not intend to and does not warn of the search warrant via, among other methods*,* a sufficient knock and announce.

Our interpretation of the phrase "without notice" is also consistent with the United States Supreme Court's usage of the term. In *Wilson*, for example, the Court discussed the knock-and-announce requirement in the context of the Fourth Amendment. 514 U.S. 927. The Court stated that "in some circumstances an officer's *unannounced entry* into a home might be unreasonable under the Fourth Amendment." *Id.* at 934 (emphasis added). Likewise, in *Hudson v. Michigan*, the Court, in holding that the exclusionary rule was inapplicable to a knock-and-announce violation, discussed the interests protected by the knock-and-announce requirement. 547 U.S. 586, 593 (2006). The Court stated that "[o]ne of those interests is the protection of human life and limb, because an *unannounced entry* may provoke violence in supposed self-defense by the surprised resident." *Id.* at 594 (emphasis added). In *Miller v. United States*, the high Court found that an officer failing to announce his presence and purpose prior to an entry by force

-14-

violated the "requirement of prior *notice* . . . a tradition embedded in Anglo-American law." 357 U.S. 301, 313 (1958) (emphasis added); *see also* 18 U.S.C. § 3109 ("The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, *after notice of his authority and purpose*, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.") (emphasis added).

Finally, we would be remiss to conclude our analysis without discussing the "presum[ption] [that] the General Assembly intended neither an absurd nor an unconstitutional statute." *A.H. v. Louisville Metro Government*, 612 S.W.3d 902, 908 (Ky. 2020); *Lewis*, 189 S.W.3d at 93 (citing *Combs v. Hubb Coal Corp.*, 934 S.W.2d 250 (Ky. 1996)) ("In construing legislative enactments, courts should look to the letter and spirit of the statute, viewing it as a whole."). If we interpret KRS 455.180 as the Trial Court here does, we question the ability of law enforcement to effectuate search warrants lawfully in the Commonwealth. Specifically, this Court can envision scenarios in which an occupant evades law enforcement's attempts to search a dwelling subject to a valid search warrant. In such a situation, law enforcement would be left with limited, if any, recourse, as entry following a constitutionally sufficient knock and announce would be in contravention of KRS 455.180, according to the Trial Court's reasoning. The

absurdity of allowing only those who do not evade law enforcement to be searched is buttressed in circumstances, such as here, where the subject offense or perpetrator does not fall within the categories enumerated in KRS 455.180. Indeed, as with most drug related offenses, the alleged crime is not one of terrorism or the use of a weapon of mass destruction; nor will the crime qualify the perpetrator as a violent offender. *See* KRS 455.180(1)(a). To posit that law enforcement can only effectuate a search warrant by providing actual or constructive notice to individuals who have present possession or control of a dwelling is incongruous with the well-settled, knock-and-announce jurisprudence discussed herein. After all, "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) (citing *United States v. Kahn*, 415 U.S. 143, 155 n.15 (1974)). In sum, the Trial Court's interpretation and application of KRS 455.180 was erroneous and necessitates reversal.

## CONCLUSION

We hold that law enforcement reasonably effectuated the subject search warrant consistent with governing, constitutional requirements. We further hold that KRS 455.180 did not apply to the search of the Chapman residence, as law enforcement made forceful entry into the Chapman residence after providing

-16-

notice through the use of the constitutionally permissible knock-and-announce procedure.[4] For these reasons, we reverse the Trial Court's orders granting the Chapmans' respective motions to suppress evidence and remand the case back to the Trial Court for further proceedings.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Russell M. Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE MALISSA CHAPMAN:

Adam Meyer
Frankfort, Kentucky

BRIEF FOR APPELLEE GARY CHAPMAN:

Sarah D. Dailey
Frankfort, Kentucky

---

[4] The Commonwealth preserved several additional arguments concerning the proper remedy for a violation of KRS 455.180 and whether the good faith exception applies. We do not reach the merits of the Commonwealth's additional arguments as we hold that KRS 455.180 is inapplicable to the facts before us.